DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DEMETRIUS ELLIOT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-1046

[ April 18, 2018 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dennis D. Bailey, Judge; L.T. Case No. 15-005496CF10A.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

This appeal arises from two burglaries of the same residence discovered five days apart. In both incidents, the house was ransacked and property was taken. Appellant was convicted of the residential burglary count alleging property damage over $1,000, but he was acquitted of the other residential burglary. He was also convicted of grand theft of property worth $20,000 or more. We address appellant's argument on appeal that the trial court erred in denying his motions for judgment of acquittal because the state failed to prove: (1) the amount of the property damage alleged in the residential burglary charge, and (2) the value of the property stolen as alleged in the grand theft charge. As to the other issues raised in this appeal, we find no error.

Appellant was charged by information in Count I with residential burglary of the victims' home between October 25, 2013 and October 28, 2013, with the intent to commit theft and causing property damage in excess of $1,000. In Count II, appellant was charged with residential burglary of the same victims' home between November 1, 2013 and

November 2, 2013 with the intent to commit theft. In Count III, appellant was charged with grand theft of property valued at $20,000 or more from the victims' home between October 25, 2013 and November 2, 2013.

At trial, the state presented the following evidence. On October 25, 2013, while the homeowners were away on a cruise, their son checked on their home. When he returned on October 28, 2013, he discovered that it had been burglarized. He found damage to the rear French doors and hurricane windows, items strewn all over the floor, and contents from the trunks of two vehicles on the garage floor. He called the Fort Lauderdale police, who processed the scene for evidence and took photographs. Police also found a cigarette butt containing a single DNA source sample that was later matched to appellant's DNA sample.

On November 2, 2013, when the son returned to the house, he noticed further damage to the French doors, additional items strewn on the floor, including some of his mother's purses, and more missing items, including chinaware and a silver tea set. The son reported the burglary, and the police again processed the home and took photographs. The son told police the damage to the French doors was more extensive after the second incident such that the doors could not be secured.

Based on information from a confidential informant, in August 2014, police obtained and served search warrants on two apartments in Fort Lauderdale—one on 19th Street and the other on 18th Court. Police found property from the victims' house in both apartments. They identified the 19th Street apartment as appellant's residence, which he shared with his girlfriend. The victims' chinaware was located at appellant's residence, dirty and stacked on the side of the kitchen sink. Police also recovered other items belonging to the victims, including dining ware, purses, binoculars, a silver urn, and jewelry. The state, however, did not specify which property of the victims was found in the 18th Court apartment, nor did it itemize the value of the items recovered from each of the apartments.

After the two burglaries, the victims paid $3,724 to replace the French doors and a hurricane window, and $408.10 to replace the locks after noticing that their house keys were missing. They paid to replace door handles but did not provide that receipt at trial. One of the witnesses testified that the total value of the items taken during the two burglaries was $24,597. Of that total, $709 worth of items returned was from the first burglary and $1,954 was from the second. The remaining $21,934 was for items that had not been returned.

When the state rested its case, appellant moved for a judgment of

acquittal on each count. He argued that the state failed to establish that the damage resulting from the October burglary (Count I) was more than one thousand dollars and that the state had not presented actual evidence linking him to the November burglary (Count II). As to the grand theft charge in Count III, appellant argued that the state had not proven that the items found in the 19th Street residence were knowingly stolen or that appellant had anything to do with the theft of the items. The trial court denied the motion for judgment of acquittal on all charges.

Appellant testified and also called his girlfriend's brother as a witness. The brother, who admitted he had 16 felony convictions, testified that his sister lived with appellant at the 19th Street apartment. The apartment shared its backyard with the 18th Court apartment, which belonged to a handyman. The handyman, who had access to appellant's apartment, was always doing odd jobs and could get people whatever they wanted. He would bring various items to the apartment, like a safe and jewelry.

Appellant testified that he was not involved in burglaries. He said he was a drug dealer, who supplied drugs to the handyman in exchange for goods. However, he never asked the handyman where he obtained the goods. Appellant testified that he had 23 felony convictions.

After appellant testified, he renewed his earlier motions for judgment of acquittal, adding that the state had not proven the dollar amount for the October burglary charged in Count I. The court denied the motions, finding that after reviewing all the evidence, reasonable minds could differ and thus, these were issues for the jury to resolve.

The court instructed the jury as follows regarding determining value of property on Count III's grand theft charge: "[a]mounts of value of separate properties involved in thefts committed pursuant to one scheme or course of conduct, whether the thefts are from the same person or several persons, may be added together to determine the total value of the theft." Neither side objected.

Ultimately, the jury found appellant guilty of the October burglary (Count I), not guilty of the November burglary (Count II), and guilty of grand theft of property worth $20,000 or more (Count III). The court denied appellant's motion for new trial. On Count I, the trial court sentenced appellant to life in prison as a habitual felony offender under section 775.084, with a 30-year prison releasee reoffender mandatory minimum pursuant to section 775.082. On Count III, the court sentenced appellant to 30 years as a habitual felony offender to run concurrently with the sentence imposed on Count I.

Appellant argues that the trial court erred in denying his motions for judgment of acquittal, because the state did not prove the damage over $1,000 element of the October burglary charge, nor the $20,000 or more property value alleged in the grand theft charge.

We review the denial of a motion for judgment of acquittal de novo. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002).

As to the October burglary, the state alleged a violation of section 810.02(2)(c)2., Florida Statutes (2015). This section converts a second-degree felony residential burglary into a first-degree felony if the defendant "[c]auses damage to the dwelling or structure, or to property within the dwelling or structure in excess of $1,000." The state presented evidence that some damage to the French doors and hurricane windows was found after the October burglary, and that there was more extensive damage to the French doors following the November burglary. After the November burglary, the victims paid $3,724 for damage to the French doors and to a roller window. However, the state's evidence did not apportion the amount of damage done to the doors and windows between the two burglaries. This is significant because appellant was convicted only of the October burglary, and there was no evidence proving that the amount of damage caused by the October burglary exceeded $1,000. For this reason, appellant argues that the trial court erred in denying his motion for judgment of acquittal.

Appellant cites *Marrero v. State*, 71 So. 3d 881 (Fla. 2011), to support his argument on proof of the amount of damages. In *Marrero*, the defendant was charged and convicted of felony criminal mischief after he drove his Ford F150 pickup truck through the entrance of a casino building in Miami-Dade County. 71 So. 3d at 883–85. The crash required the replacement of four impact-resistant glass doors. *Id.* at 883. The charge of criminal mischief required proof of damages of more than $1,000, but the state failed to present evidence of the repair or replacement costs of the damaged property. *Id.* at 884, 887. Instead, the state presented surveillance footage of the defendant's truck crashing through the doors and testimony from the facilities director of the casino, who had no knowledge of the cost or dollar amount of the damage. *Id.* at 884. The Third District relied on a "life experience" exception to affirm the conviction. *Id.* at 890.

The Florida Supreme Court reversed Marrero's conviction, holding that the conviction was improper because the state failed to prove the amount of damages—an essential element of the crime. *Id.* at 890–91. While

4

noting "some conflict among our district courts as to whether the amount of damage is an essential element of a felony criminal mischief charge," it observed that our court had previously held that the amount of damage is an essential element of the crime of felony criminal mischief. *Id.* at 886 (citing *Zanger v. State*, 42 So. 3d 944, 945 (Fla. 4th DCA 2010)).

The court in *Marrero* further explained:

> [A] plain reading of the criminal mischief statute reveals that the amount of damage is an essential element of the crime of *felony* criminal mischief. The *only* difference between second-degree misdemeanor mischief and third-degree felony mischief is the value of the damaged property. Felony criminal mischief requires proof of the amount of damage, whereas second-degree misdemeanor mischief does not. Absent proof of the amount of damage, an act of criminal mischief, as defined by the criminal mischief statute, is a *misdemeanor* of the second degree. The value of damage, therefore, is clearly an essential element of *felony* criminal mischief.

*Id.* at 887 (emphasis in original).

Similarly, a plain reading of the residential burglary statute shows that the amount of damage is an essential element of the crime of residential burglary causing "damage to the dwelling or property within the dwelling in excess of $1,000." § 810.02(2)(c)2., Fla. Stat. First-degree felony residential burglary requires proof of the amount of damage, whereas second-degree felony residential burglary does not.

Appellant also argues that the state did not prove that the value of the property stolen by appellant was worth $20,000 or more to support the grand theft charge in Count III. Appellant contends that the state relied solely on testimony that the homeowners recovered $709 worth of property taken during the October burglary and $1,954 worth of property taken during the November burglary, and that they were unable to recover an additional $21,934 worth of property still missing as a result of the combined burglaries. Appellant argues that there was no evidence tying him to the November burglary, of which he was acquitted, and that the items retrieved from his apartment were found more than eight months after the burglaries.

To form the basis for the alleged property value of $20,000 or more, appellant asserts that the state combined two separate scenarios—his theft of some of the property during the October burglary and his receipt

of some of the property taken in the November burglary at some point during the eight months after the October burglary. Appellant argues that construing this theft and receipt of stolen property as "one scheme or course of conduct," as the state urges, would allow convictions for conduct outside the time period alleged in the charging document—between October 25 and November 2. *Cf. Sebastiano v. State*, 14 So. 3d 1160 (Fla. 4th DCA 2009) (finding common scheme or course of conduct where defendant enticed victim into series of fraudulent real estate purchases and the defendant was found guilty of organized fraud). Appellant argues that there was no evidence that he received the November burglary proceeds within the time period alleged in Count III's grand theft charge.

Based on the foregoing, we conclude that the trial court erred in denying appellant's motions for judgment of acquittal on the residential burglary and grand theft counts, as charged in the information, and reverse and remand for the trial court to reduce appellant's first-degree felony conviction for residential burglary with property damage in excess of $1,000 to second-degree residential burglary (Count I), to reduce appellant's second-degree felony conviction of grand theft of property worth $20,000 or more to third-degree grand theft, and to resentence appellant accordingly. *See Marrero*, 71 So. 3d at 891.

*Reversed and Remanded.*

MAY and DAMOORGIAN, JJ., concur.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**